UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ERLIN PERALTA,

       Plaintiff,

v.                                Case No. 8:19-cv-786-T-MAP

COMMISSIONER OF SOCIAL SECURITY,

       Defendant.

_____/

## ORDER

This is an appeal of the administrative denial of disability insurance benefits (DIB) and supplemental security income benefits (SSI). *See* 42 U.S.C. § 405(g). Plaintiff argues the Administrative Law Judge (ALJ) erred by not including any limitations related to her headaches in the residual functional capacity (RFC) determination, and by failing to properly evaluate her headaches and related symptoms. After considering the parties' joint memorandum and the administrative record, I find the ALJ applied the proper standards, and the decision that Plaintiff is not disabled is supported by substantial evidence (docs. 9 and 21). I affirm the ALJ's decision.

    *A.  Background*

Plaintiff Erlin Peralta was born on June 26, 1967. She was 45 years old on her alleged disability onset date of November 6, 2012. She attended college for two years, and worked as a customer service representative until her bilateral carpal tunnel syndrome prevented her from continuing this work (R. 37). Aside from bilateral carpal tunnel syndrome, Plaintiff also alleges disability due to headaches, and pain in her neck, low back, knee, and shoulder. (R. 41-43; 53-57). Unfortunately, she also has other health problems including asthma, gastroesophageal reflux, and vertigo (44-48). Plaintiff lives in a house with her husband and young adult son (R. 48).

The Appeals Council remanded this case for further proceedings after the ALJ's first decision.  The Appeals Council found the ALJ had erred because the vocational expert's (VE) testimony was inconsistent with the Dictionary of Occupational Titles (DOT).  Specifically, all three jobs identified by the VE (and adopted by the ALJ) required frequent handling per the DOT job descriptions (exceeding the RFC's restriction to only occasional handling) and the VE provided no explanation for the discrepancy (R. 154-155).  Upon remand, the ALJ held a second hearing, then issued a second decision (R. 63-91; 13-32).  The ALJ found Plaintiff suffered from the severe impairments of asthma/ acute bronchitis; headache; cervical spondylosis with radiculopathy; low back strain; bilateral carpal tunnel syndrome; and obesity (R. 19).  Aided by the testimony of a VE, the ALJ determined Plaintiff was not disabled as she had the RFC to perform light work.  Specifically,

> … the claimant has the residual functional capacity to perform light work as defined in 20 CFR 1567(b) and 416.967(b) that does not require more than occasional crawling and pushing/pulling with both upper extremities and occasional overhead reaching with the left upper extremity.  She is limited to work that does not require more than frequent balancing; no more than occasional fingering bilaterally, i.e., fine manipulation of items no smaller than the size of a paper clip; nor more than occasional handling of objects bilaterally, i.e., gross manipulation; and nor [sic] more than a concentrated exposure to extreme temperatures, wetness, humidity or irritants such as fumes, odors, dust, gases or poorly ventilated areas.

(R. 20).  The ALJ found that, with this RFC, Plaintiff could not perform her past relevant work, but could perform the jobs of call out operator and furniture retail clerk (R. 25).  The Appeals Council denied review.  Plaintiff, after exhausting her administrative remedies, filed this action.

*B.  Standard of Review*

To be entitled to DIB and/or SSI, a claimant must be unable to engage "in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period

of not less than 12 months." *See* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *See* 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration, to regularize the adjudicative process, promulgated detailed regulations that are currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1520. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a)(4). Under this process, the Commissioner must determine, in sequence, the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment(s) (*i.e.*, one that significantly limits his ability to perform work-related functions); (3) whether the severe impairment meets or equals the medical criteria of Appendix 1, 20 C.F.R. Part 404, Subpart P; (4) considering the Commissioner's determination of claimant's RFC, whether the claimant can perform his past relevant work; and (5) if the claimant cannot perform the tasks required of his prior work, the ALJ must decide if the claimant can do other work in the national economy in view of his RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4). A claimant is entitled to benefits only if unable to perform other work. *See Bowen v. Yuckert*, 482 U.S. 137, 142 (1987); 20 C.F.R. § 404.1520(f), (g).

In reviewing the ALJ's findings, this Court must ask if substantial evidence supports those findings. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The ALJ's factual findings are conclusive if "substantial evidence consisting of relevant evidence as a reasonable person would accept as adequate to support a conclusion exists." *Keeton v. Dep't of*

*Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citation and quotations omitted).  The Court may not reweigh the evidence or substitute its own judgment for that of the ALJ even if it finds the evidence preponderates against the ALJ's decision.  *See Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  The Commissioner's "failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining the proper legal analysis has been conducted mandates reversal."  *Keeton*, 21 F.3d at 1066 (citations omitted).

   *C.  Discussion*

   Plaintiff asserts the ALJ erred by failing to include any limitations resulting from her severe headaches in the RFC.  She states that "[s]ince the Administrative Law Judge found that [her] headaches were severe, logically, there has to be some limitation as a result" (doc. 21, p.8).  Though she admits that experiencing headaches does not necessarily preclude all work activity, she says "[t]ypically, limitations as a result of headaches might include the need to avoid loud noise, bright lights, the inability to interact with persons other than superficially when experiencing headaches, etc." (doc. 21, p.8).  She posits that both jobs identified by the vocational expert require frequent talking and hearing and dealing with people.  Additionally, the job of furniture rental clerk "requires influencing people in their opinions, attitudes, and judgments" and "may involve constant exposure to bright lights" (doc. 21, p.9).

   Under the statutory and regulatory scheme, a claimant's RFC is a formulation ultimately reserved for the ALJ, not a treating provider or a State Agency physician or psychologist.  Limitations in the RFC must be supported in the record, however, the ALJ's RFC findings need not mirror or match a treating provider's opinions (after all, the responsibility for assessing the RFC rests with the ALJ).  *See Bloodsworth*, *supra,* 703 F.2d at 1239.  In reaching his RFC determination, the ALJ thoroughly summarized the medical evidence.  He discussed Plaintiff's

4

severe impairments, as well as her non-severe impairments.  In support of his RFC finding, the ALJ considered all symptoms and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence based on 20 C.F.R. § 404.1529, § 416.929 and SSR 16-3p.  He also considered the opinion evidence as required by 20 C.F.R. § 404.1527 and § 416.927 (R. 20).

Plaintiff's argument that the RFC should have included limitations related to her severe headaches is flawed.  The mere existence of an impairment does not reveal the extent to which the impairment limits a claimant's ability to work or undermine an ALJ's RFC determination.  *Moore v. Barnhart,* 405 F.3d 1208, n.6 (11th Cir. 2005).  Buttressing her assertion, Plaintiff points to three office visit notes where she complained of sensitivity to light, noise, and stress over the course of her multi-year treatment history. However, as the Commissioner indicates, the objective medical evidence does not demonstrate that Plaintiff had any additional limitations beyond those already assessed and included in the ALJ's RFC.  The record is devoid of evidence limiting or restricting Plaintiff's exposure to light, noise, and stress. And the medical evidence reflects that treating providers managed Plaintiff's headaches conservatively and she responded to medication or failed to follow through with follow up appointments.

Medical evidence from Plaintiff's treating sources supports the ALJ's RFC.  From 2012 through 2018, Plaintiff treated at Doctor Today, a primary care clinic where she saw a variety of doctors for a variety of complaints including flu-like symptoms; neck, back, knee, and shoulder pain; headaches; gastritis; motor vehicle related injuries; carpal tunnel related symptoms; gynecological care; bronchitis; colds and coughs (Ex. 1F, 14F, 19F).  Insofar as headaches are concerned, treatment notes from September and December 2012, show Plaintiff complained of a headache and took Goodies to control her pain (R. 415-417; 429).  She did not complain of

headaches again until May 2015 (R. 612).  The May 29, 2015, office note states her complaints on that date included back pain, leg and arm pain, headache, knee pains, chest pain and shortness of breath (R. 612).  Her next complaint about headaches was not until August 2016.  The office note dated August 9, 2016, states her headaches have gone on for a long time and are getting worse. She takes Advil which eases the pain slightly.  She described the pain as located on front and throbbing in nature; light makes her pain worse and sitting in dark room makes it better (R. 707). Dr. Saira Naseer at Doctor Today prescribed Topamax daily and Fioricet as needed, and asked Plaintiff to keep a headache diary and follow up in a week or earlier if needed (R. 709).  Plaintiff did not return to Doctor Today until December 2016.  On that date she complained only of stomach discomfort, nausea, and diarrhea (R. 703).  At her next visit, in January 2017, Plaintiff complained of excessive sweating at night, hot flashes, and migraine with nausea (R. 700).  She reported taking a pill for it that helped, but she did not recall the name of it (R. 700).  The next month, February 2017, she returned to Doctor Today twice.  On both dates she reported headaches (R. 692, 696). However, she did not return to Doctor Today until May 2017 for a routine pap and to refill her prescriptions (R. 688).   She retuned twice in June 2017 to get the results of the pap test (R. 684) and about menstrual-like pain (R. 681).  Plaintiff did not complain of headaches at any of these three appointments.

Plaintiff saw neurologist Alain Delgado in June 2017 about her headaches too (R. 621). Dr. Delgado's office note indicates Plaintiff relayed that her migraines occurred daily. The note provides:

> The problem is worse.  Location is frontal left and frontal right.  There is radiation to posterior. The patient describes it as pressure and throbbing.  Timing of headache: daytime, upon awakening, weekday and weekend. … Symptom is aggravated by bright lights, noise, stress and weather.  Relieving factors include darkness, relaxation and sleep. Associated symptoms include blurred vision, dizziness, loss of consciousness, nausea, neurological symptoms, performance changes, photophobia and vomiting. …

(R. 621).  Dr. Delgado directed Plaintiff to discontinue over-the-counter analgesics, discussed medication overuse headaches, instructed her to restart topiramate 50mg at night increasing to twice daily if tolerated with side effects, and discussed maintaining this treatment for at least 2-3 months (R. 624).  He also instructed Plaintiff to take Sumatriptan 100 mg at migraine onset, repeating after two hours if needed.  But Dr. Delgado did not impose any limitations or restrictions. Instead, he instructed her on diet, activity, and exercise and to follow up with an office visit in three months (R. 624).  It appears Plaintiff did not return to Dr. Delgado; this single office note is the one included in the medical evidence.

In August 2017, Plaintiff returned to Doctor Today reporting that she had a headache and had taken over-the-counter medication because she thought she may be coming down with the flu (R. 676).  In October 2017, Plaintiff returned with complaints related to an upper respiratory infection; she had no headache-related complaints on that date (R. 672).  And she returned in December 2017 with complaints of both a headache and sore throat for one week.  She was diagnosed with bronchitis (R. 668).  She returned again in December 2017 and did not report any more headaches; instead, she complained of chest pain and stomach discomfort (R. 662).  Plaintiff did not return to Doctor Today until January 2018.  On that date she complained about having a headache and cough for the past ten days (R. 655).

Although Plaintiff maintains that the ALJ should have identified what limitations she would have as a result of her headaches and included those limitations in the hypothetical to the VE (doc. 21, p.9), after reviewing the administrative record, I am unpersuaded by this assertion. *See Moore, supra,* 405 F.3d 1208 at n.6.  Ultimately, under the statutory and regulatory scheme, a claimant's RFC is a formulation reserved for the ALJ, who must support his findings with substantial evidence.  *See* 20 C.F.R. § 404.1546(c).  Based on the substantial evidence the ALJ

7

summarized, the ALJ restricted Plaintiff to a reduced range of light work, and found her capable of performing the jobs of call out operator and furniture rental clerk (R. 25).  The task of this Court is simply to determine whether substantial evidence supports the ALJ's decision, not to substitute its judgment for that of the Commissioner.  To the extent Plaintiff asks me to re-weigh the evidence or substitute my opinion for that of the ALJ, I cannot.  Where, as here, the ALJ's findings are based on the correct legal standards and are supported by substantial evidence, the Commissioner's decision must be affirmed even if I would have reached a different conclusion.  *Bloodsworth, supra*, 703 F.2d at 1239.

### 2.  headaches

Plaintiff's second argument is related to her first one.  She complains that the ALJ failed to properly assess her headaches pursuant to Social Security Ruling (SSR) 16-3p.[1]  The applicable regulation governing evaluation of subjective complaints is 20 C.F.R. § 404.1529.  Pursuant to the first step of SSR 16-3p and this regulation, the ALJ determines whether the claimant has a medically determinable impairment that could reasonably be expected to produce the claimant's alleged symptoms.   For the second step, the ALJ evaluates the "intensity and persistence" of the claimant's symptoms and determines the extent to which the symptoms limit the claimant's ability to perform work-related activities.  The ALJ should consider the following factors:  1) daily activities; 2) location, duration, frequency, and intensity of pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; 5) treatment,

---

[1] Social Security Ruling 16-3p rescinded a previous social security ruling that concerned the credibility of a claimant.  *See* SSR 16-3p, 82 Fed. Reg. 49,462, 49,463 (Oct. 25, 2017).  SSR 16-3p removed the term "credibility" from its sub-regulatory policy because the Social Security Administration's regulations did not use that term.  And SSR 16-3p clarified that "subjective symptom evaluation is not an examination of an individual's character."  *Id.*

other than medication, the individual receives or has received to relieve pain or other symptoms; 6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g. lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and 7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.  See 20 C.F.R. § 404.1529(c)(1), (c)(3); SSR 16-3p.

Looking at the ALJ's decision, it is apparent the ALJ followed this regulatory framework in determining Plaintiff's RFC.  In evaluating her subjective complaints, the ALJ stated he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. § 404.1529, § 416.929 and SSR 16-3p" (R. 20).  He discussed the two-step process, and then referred to Plaintiff's Initial Disability Report and her hearing testimony.  While most of the ALJ's discussion focused on Plaintiff's carpal tunnel-related symptoms, he also discussed her headaches and back pain.  He noted she had received no more than conservative treatment, that her headache treatment was mostly with over-the-counter medications, and that a computerized tomography brain scan demonstrated no significant acute intracranial abnormalities (R. 22).  The ALJ discussed the opinion evidence that revealed no headache-related limitations, and he mentioned that Dr. Patterson opined that Plaintiff exhibited "symptom magnification" (R. 23). Buttressing his RFC, the ALJ indicated it was "supported by the assessment of the State agency medical consultant Dr. Meade, opinion evidence from Dr. Rafferty, clinical and objective findings, and only in part, by the claimant's allegations" (R. 24).  The ALJ explained that at the hearing Plaintiff "alleged limitations so extreme as to appear implausible given the clinical and objective findings contained in her treatment records."  He stated:

> Of note, a limitation to less than a full range of light level exertion is a significant limitation.  I find the residual functional capacity more than adequately considers the

claimant's subjective allegations, but only those allegations that could be supported by the medical evidence of record.  After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effect of these symptoms are not entirely consistent with the medical evidence and the other evidence in the record for the reasons explained in this decision (R. 24).

Like formulating a claimant's RFC, weighing the subjective symptoms is within the ALJ's province.  As previously stated, to the extent the ALJ asks me to re-weigh the evidence or substitute my opinion for that of the ALJ, I cannot.  *See Moore v. Barnhart*, 405 F.3d 1208 (11th Cir. 2005).  If the ALJ's findings are based on the correct legal standards and are supported by substantial evidence, the Commissioner's decision must be affirmed even if I would have reached a different conclusion. *Bloodsworth, supra*, 703 F.2d at 1239.  The ALJ's decision is supported by substantial evidence.

### D.  Conclusion

For the reasons stated above, the ALJ's decision is supported by substantial evidence.  It is ORDERED:

(1) The ALJ's decision is AFFIRMED; and

(2) The Clerk of Court is directed to enter judgment for Defendant and close the case.

DONE and ORDERED in Tampa, Florida on June 1, 2020.

MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE